Good morning, Your Honor. My name is Richard Sagerblum. I'm the attorney for Mr. Maxanoc. This is an appeal from a summary judgment that was granted to the employer. Mr. Sagerblum, that microphone is solely for the purpose of recording, so I have a bit of a cold. I'm having a little bit of difficulty hearing you, so don't be shy to speak up. Sure, Your Honor. I apologize. This is an appeal from a summary judgment. My client, who's Filipino, was a casino shift manager in Las Vegas, and he was fired. He challenged his termination based on race and national origin, and the summary judgment was granted below by the district court, and we're appealing that decision. And basically, as I view this appeal, it goes to how the courts will look at certain evidentiary facts on a summary judgment motion, specifically with respect to comments that are made and then what's called the same-actor inference. With respect to the comments, first off, my client, after he was terminated, well, let me back up. The court found that we could prove a prima facie case. My client, who's Filipino, was fired. He was replaced by a white gentleman, and so there was no question about that. So the question became whether there was enough evidence of pretext, which is a question you always ask. Well, the three-step analysis, you made a prima facie case by showing that your person was a member of a minority group and was fired. Right. Then the employer gave his reasons for firing him, and then the burden shifts to you to show those reasons are pretextual. Now, why did the trial court err in saying that Mr. Hunter's comments when reviewing employment applications, none of whom he considered qualified applicants, that aren't there any white people who want this job or similar to that? Why did the district court err in saying that that was a random remark that was not tied to Mr. Maxenach and was not in any way an indication of discrimination on race as to Mr. Maxenach? All right. First off, the court found that it was a direct evidence of discriminatory remark, that statement itself. Yes. Okay. So the question is whether one question would be whether it's a stray remark. Stray remarks typically are made by people outside the decision-making process in generic kind of ways. This was made by the decision-maker, Mr. Hunter, in a context in which decisions were actually being made. But not as to Mr. Maxenach. No. But that's the ---- It didn't affect his employment at all. Right. But stray remarks are not ones that have to apply to the plaintiff. They're remarks that apply to the decision-making process as opposed to just talking about this great ---- I walked past a gray-haired man yesterday. Do we know when it was made in relation to when Mr. and when your plaintiff was fired? There's no specific context. He was the ---- my client was the ship manager for three years before he was terminated. So it was somewhere in that three-year period because he was present when the comment was made. Oh, he was present? Yes. Okay. And what it was is that Mr. Hunter had asked them to provide resumes of people to be hired. He then sat down with the managers, including my client, and said, I've looked at these. There's nobody that I like. Aren't there any white people applying? That was three years before Maxenach was hot-fired? No, Your Honor. What he said, he didn't say aren't there any white people applying. Doesn't anybody know any white people? Isn't that what he said? I'm not reading it. But I read it, and I think I remember precisely what he said because it's going to be pivotal in this case. And what he said was doesn't anybody know any white people? Isn't that what he said? Yes, Your Honor. But the fact is all the people who had been submitted were nonwhite, and he ---- and they were all people that the managers themselves considered to be acceptable employees. And then he rejected them, and in the process of rejecting them, made the comment about aren't there any white applicants or something to that effect. So that was made a specific comment. It was made in a decision-making process, and it was made by the decision-maker. But not the decision-making process as to Maxenach. No, I agree. He didn't fire Mr. Maxenach. My understanding is that there's some residual racism in Mr. Hunter. Not residual. I mean, if he rejects minority applicants and at the time says something to the effect of I would like a white applicant, that ---- But he doesn't always reject minority applicants. That's one of the problems you have in this case. Hunter is the man who promoted Maxenach and kept him working there for four years. Three years. Yes, Your Honor. Doesn't that hurt a bit? It does, and that's an inference, and that's one of the questions on this appeal is how does a court on summary judgment weigh direct evidence of discriminatory intent with this same actor inference? And my argument there would be, first, the fact is that this is a three-year process. If he hired him yesterday and fired him today, it would be difficult to make an inference. Here's what Hunter said. I mean, that would be a strong inference. I can't hire any of these. They have bad records. Their records are not good enough. He then added, where are all the white people? Doesn't any ---- Isn't there any white people looking for a job? That's what he said. Right. Okay. But he says I don't like the people. These people were recommended by the group that he was talking to. So it's not like there was something ---- Anyway, on summary judgment, taking the inferences in our favor, he rejected minority applicants along with making that comment. And that's the decision-maker making a comment in the process of making a decision, which I believe, even though it doesn't apply, it wasn't done when my client was terminated. It applies. And, for example, I would give you the Cordova case, which I cite, which is one of my cases where the person who fired my client made a comment about Mexican-Americans being dumb. It wasn't about my client, but yet this Court said because that comment would directly affect ---- went to Mexican-Americans, that would be a direct evidence of discriminatory intent. Was that made close to the time of termination in that case? No. It was made somewhere in the two-year process around the termination. It was made about another applicant. So your best proof on pretext is this remark made by Hunter. Well, Your Honor, I would actually disagree a bit on that because, I mean, that's direct evidence. But we have, and no one seems to want to focus on this, in a discrimination case, as you pointed out, you have to prove that you're replaced by someone outside your category. But that just sets up your prima facie. Right. But they lied about that. They submitted an answer to interrogatory sworn by the Director of Human Resources saying that my client was replaced by an Asian. They made a motion to correct that. The trial court accepted their basis as being in error, right? They just, two months later, they just filed an amended interrogatory answer and said something different. But that doesn't mean that you don't, anytime you change your mind like that within a two-month period, that's evidence of discriminatory intent. That's an inference right there. So the problem is we're getting into the water here and trying to take out these legal theories and weigh them on summary judgment. And I don't think that a court should be allowed to do that. It's when you have these rules and then you get into nitpicking, well, is this a strong enough inference? Is that too long a time period? How are we supposed to know at our level, you know, when we have enough evidence to get past summary judgment? The other point is, and these could be straight remarks, but they're admissible, the comment about shooting African-Americans on Martin Luther King Day, the comments he made about women. He also made a comment to my client about speaking Tagalog to a co-employee. So, I mean, there is other evidence out there, but by far the strongest piece of evidence is that comment about where are the white applicants. Roberts. Thank you very much. Good morning. May it please the Court. I'm Jeffrey Miller of Lewis, Brisbois, Biscard, and Smith on behalf of Defendant and Appalee Coast Hotels and Casinos, Incorporated. I see the Court is focused on the pretextual issue, and that is what I'd like to address very briefly for the Court here this morning. We're focused on whether there is evidence in the record which, taken most favorably to the nonmoving side, creates a reasonable issue of fact to be tried on the issue of whether there was pretext shown as to the reasons given by the employer for firing the plaintiff. I'd be happy to do that, Your Honor. The key things in this case that actually are different than some of the cases that were cited in the opening brief, we have two principles playing part, the same actor inference and the notion of what a stray remark is. The same actor inference has to be drawn against your side, doesn't it, because you're the move-in? No, it doesn't, Your Honor, because the same actor inference is applied where you have the common sense notion that an employer does not promote someone if they have a racial animus against that person. We have undisputed evidence in this case that there was a promotion from the lower position to the upper position. So at that point, the district court was absolutely correct in applying the inference. The key to the inference is that it does change the focus of what the court should look at as far as the burdens. Once the inference kicks in, there's a very strong inference of no discrimination. And what has to happen is really a second part. Now the plaintiff has to show stronger evidence of bias. That's the real key here. Once the undisputed evidence comes in, which we have, establishing the promotion, now it's up to the plaintiff to show stronger evidence. And what plaintiff has presented was really a series of weak evidence that does not really do the trick here. For example, let's go to the remark again about where are the white people. That remark was not made to plaintiff. It was made in another meeting. It was overheard by someone else. And by the way, he was not there when the remark was made. There's nothing in the record to indicate that he was there. It was made to an individual that eventually got fired actually a few months after he did. How did it get in the record? Was it an affidavit or statement by the plaintiff that it was said? That was a deposition in the record by an individual that was taken that overheard it. And it was interesting, if you read that deposition carefully, more than once, two or three times, she says that the remarks were made in a joking way, which again supports the district court's finding of a stray remark. But this remark also has absolutely, and I think as this Court has observed, has nothing to do with the termination. If anything, the remark goes to those individuals who were in the hiring process of the lower position, not someone who's been there for six years and now because of some poor conduct in his employment is being terminated. Kennedy, I think his point, though, is that anybody who would make this remark has some problem, and that person, the person who made this remark, is the person who fired my client. Isn't that pretty much what you see as his argument? Well, I think his argument is that this shows some type of racial animus. Yes. I would suggest to the Court, and I know the district court did find direct evidence, but I'm not certain of that, even on that remark. Because of the context, I think the Court did read the actual remark. I think there has to be an additional inference to go, to take it to the next step, to show any type of racial animosity. The facts on the ground don't justify racial animus in this case. Well, isn't there simply a conflict in Mr. Hunter's actions? On the one hand, he makes a remark which betrays some racial animus in his makeup. On the other hand, he promotes Maxenach. Now, does the same-actor inference overcome the character evidence? It does, Your Honor. It does because of the ---- Didn't we have a case involving a Norwegian captain, Coughlin? I think I sat on that case. The Coughlin case is the one that I was just thinking of, Your Honor, and that's exactly the case that applies here, where the same-actor inference carries the day. But there was no evidence in that case that the Norwegian owners had made a remark, can't we get any Norwegians? We don't want any more Americans applying here. That evidence wasn't in that case. Well, not precisely, Your Honor, but the gist of that rationale is exactly the same. And when we're looking at the big picture, obviously, the issue was the racial animus. What I find particularly interesting in this case is most of these type of cases, there's a challenge of the poor conduct for the firing. It is undisputed in this case we have poor work performance as the reason for the firing. We had an incident in 2001 where there was a suspension, actually, of this employee for not disciplining another employee who was sending around a photo of some ---- a lewd photo of another employee. We have a situation where other employees were overpaid in ---- were overpaying customers in 2002. And finally, we had the multiple transaction log problem. All of those incidents, which was the reason for the firing, were not disputed in any way. So we have that into play. We have the same-actor inference, and then we have what the Court observed, and I think is likewise very important, is the notion of what a stray remark is. A stray remark is nothing more than an isolated comment uttered in an ambivalent manner and not tied directly to the termination. They say that it makes a difference if it's made by the same person who decides the issue, you know, the supervisor who fires the person. The cases that apply the stray remark, there usually are the person, the supervisor that makes the remark, because that's when it ---- but that is not what the key is to the Court. What the Court looks at is the manner it was said. Was it ambivalent? How was it said? What was the context? And then it looks at, is it directly related to the adverse employment action? And what we have undisputed in this case is it was said in a jokingly manner. It was not said to him. And most importantly, had nothing to do, absolutely nothing to do, with the termination. It was not a situation where this was ---- where it was sat down with plaintiff and these comments were made directly to him and it was in tantamount to the discussions that were made of his poor performance. This was something done, and by the way, it was something done at another time, and we don't know what that time is. The record is unclear exactly when these comments were made. They very well could have been made after plaintiff left employment. We don't know. But the bottom line is they had absolutely nothing to do with the termination, and that's the key. The other thing that I think is very important is to look at the overall context of what we're talking about here. The facts on the ground do not justify a showing of racial animus. We have a situation here where, undisputed on this record, 50 percent of the workers on the floor at this casino were women, 30 to 35 percent of non-supervisory floor personnel were minorities. He has a history of hiring minorities. He promotes minorities. We have facts on the ground that indicate that this is not a situation where we have racial animus. But you're asking us to weigh the evidence, aren't you? I'm not asking you to weigh the evidence, Your Honor. These cases are interesting because we know the summary judgment standards, but we also have to look at the types of cases that we're dealing with. We're talking about Title VII discrimination. And obviously I know you're aware when you look at these cases, somehow the analysis that is used by the Court is not the pure and simple weighing of the one piece of evidence versus one piece of evidence. We have a number of line of cases that talk about stray remarks. We have a number of line of cases that talk about the same actor inference. Is there some weighing going on there? Well, I'll leave that for you to decide, but I would say it's not as cut and dried as it is on this side of the equation where you have your typical summary judgment. Where you have a Title VII summary judgment motion. Mr. Miller, you're almost down on your time. Don't you want to tell us why there is no factual dispute on this record? Yes, Your Honor, because the evidence is insufficient to allow a showing of pretext on the scenario under the cases cited in the brief. The big question for this Court is... He's coming to rebut. I think what your point is, and you tell me, the incidents that led to the firing are undisputed. Correct. These things happened. The question is, if there's a question at all, do the remarks made prior to the firing, we don't know when, rise to a level to cause someone to question the facts? Absolutely correct. That is correct. And they do not. They do not rise to that level of substantiality to allow a question of fact on the issue. Now, do we have to weigh anything before we decide they don't rise to that level? I think you look at this record and you compare it, and that evidence in and of itself as a matter of law is insufficient to meet that burden. With that, I'll conclude. Mr. Sagerblum, would you like a minute of rebuttal? Yes, Your Honor. First, my client was present at the meeting where the comment I made was about, aren't there any white people to hire, looking for a job? Secondly, with respect to this same-actor inference, that... How long ago was it? Does this record show us... Three years between when he was hired and when he was fired. When the remark was made and when he was fired. That, no, it does not, Your Honor. The other thing is that the promotion itself that we're using as the same-actor inference was not even a promotion as far as financial promotion. It was just a title. So he actually lost money because he didn't get... You know, you made that in your brief, but if it wasn't, why did he take it? Why did he say, I don't want it, I'm going to stick with my other job? He didn't. He took the promotion. So it's kind of strange to argue, okay, in terms of dollars and cents, it wasn't a promotion because it didn't get paid out. He made less money because he didn't get tips. That's pretty much what you're arguing. And I don't know, if that's so, then he should have said, I don't want the promotion, I'm going to keep my old job. But he didn't. He took the promotion. Well, you have to be in Las Vegas for a while to appreciate that, maybe. But, anyway, that's my argument. I just want to point out that I think that the judge did weigh the evidence, which I think is inappropriate, on summary judgment. Thank you, Your Honor. Thank you. Thank counsel. This matter will stand submitted.
judges: Farris, Bea, Siler